tIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 19-CR-1631 DHU |
| | ) | |
| PRAGNESHKUMAR PATEL, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT PRAGNESHKUMAR PATEL'S FORMAL OBJECTIONS TO HIS PRESENTENCE INVESTIGATION REPORT [DOC. 597]

Defendant Pragneshkumar Patel, by and through his counsel of record, Jason Bowles of Bowles Law Firm and Robert Gorence of Gorence Law Firm, hereby submits his objections to his Presentence Investigation report (Doc. 597), and objections as follows:

### I.     Introduction

The presentence report prepared in this case provides a perfect example of how the sentencing guidelines can be contorted and unreasonably applied to create an absurd result. The ultimate guideline calculation that probation computes suggests an advisory sentence for Pete Patel, a minority owner/landlord of a hotel, of 168-210 months - levels reserved for large and established drug dealers, who have full knowledge that a particular place is being used as a large scale stash house for the continuing commercial sale of large quantities of drugs.

Yet, Patel was not a drug dealer.  He was a landlord of a hotel.  There is no evidence that Mr. Patel knew or believed that the Best Choice Inn was a primary purpose drug "stash house" disguised as a legitimate commercial venture. Instead, it was a legitimate hotel, and run as such, albeit in a high crime and drug use area in Albuquerque.

Mr. Patel was largely absent from New Mexico and living in another state during most of the indicted time frame. As the PSR indicates, Patel managed the motel from September 2017 to March 2018.  He then was an owner-landlord and leased the Best Choice Inn in March 2018 to Mr. Bhula to operate it. Mr. Patel had no knowledge of any ongoing sale of narcotics at the Best Choice Inn. At most, he saw or heard evidence of some personal use of narcotics within the Inn. This undoubtedly occurs on a nightly basis at every hotel on Central.  Mr. Patel admitted in his plea agreement to knowing of personal use of drugs:

Beginning in or around September 20l7, I purchased the Best Choice Inn located at 7640 Central Avenue Southeast in Albuquerque, New Mexico, in Bernalillo County, in the District of New Mexico. From September 2017 to approximately March 2018 I managed and controlled the Best Choice Inn. In March 2018 I leased the Best Choice Inn to my co-defendant Kamal Bhula, who took over the on-site management of the hotel until law enforcement shut it down on June 18, 2019. From September 2017 through June 18, 2019, I made a profit from renting this hotel to tenants who used controlled substances on the premises, and I made it available for the purpose of unlawfully using controlled substances. In my capacity as an owner and manager l knew the tenants I rented to and persons I employed were using controlled substances in the individual rooms of the hotel and on the overall premises. Additionally, in my capacity as the owner and manager l knew that rampant drug use was occurring at the Best Choice Inn by the tenants and employees. I was confronted with physical evidence of pervasive drug use at the Best Choice Inn, and I personally observed such activity on the premises. Thus, I knew that using controlled substances was one of the primary purposes of the Best Choice Inn. I nevertheless allowed it to continue.

Patel was unaware of any distribution or sale of controlled substances. Mr. Patel as landlord did everything that he could to ensure that the Best Choice Inn was run as a legitimate hotel and

business.  The idea that hotel guests in Central Avenue hotels use narcotics is nothing surprising. This is a fact of which most people in Albuquerque are likely aware. Mr. Patel did not participate in, or have knowledge of, any drug distribution conspiracy, however, and nor was he ever in personal possession of drugs.

Mr. Patel has numerous objections to the presentence report, as detailed below. He adopts and incorporates the objections and arguments made by Mr. Bhula and his counsel, Ms. Moss. Mr. Patel also requests an evidentiary hearing wherein the government is required to establish by a preponderance of the evidence that the allegations to which there are objections are supported by competent and reliable evidence, and that the guidelines have been appropriately applied.

## II.      **Objections to specific paragraphs**

The presentence report in the various opening factual paragraphs is devoid of any proof or allegation that Mr. Patel knew of any drug sales going on at the Best Choice Inn. It is devoid of any evidence or allegations that he directed or participated in any such activities. There is no evidence that Mr. Patel was specifically aware of or participated in any of Mr. Craft's or Mr. Horton's drug possession or drug activity. There is also no evidence that he knew of any government-controlled drug sales.

As such, Mr. Patel objects to paragraph 40, maintaining that he is an organizer or leader in the "maintaining a drug premise" offense and he objects to the 4 level enhancement, as explained further below.

Mr. Patel objects to paragraph 31 and the alleged comments by housekeepers about Mr. Patel's knowledge of drug activity in rooms. The testimony is misquoted in terms of the actual testimony by the housekeepers and spun in favor of the government.

In the grand jury testimony when the housekeepers were asked about Mr. Patel's knowledge of knowing there were drugs in a room their answer were different, and they worked at the same time and same rooms all the time.

Testimony from Grand Jury held on August 13, 2019, Matter 11  (V.C.H.)

Page 6, Line 17-19:

```
17        Q.   Okay.  Did Pete know about the drug
18   activity at the hotel?
19        A.   No, I don't know.  I don't know.
```

Page 17,  lines 3-14

```
 3        Q.   When you would clean the rooms and find
 4   drugs and condoms, did you ever tell the management?
 5        A.   I -- I told him that I saw many syringes,
 6   and he also saw them.  When he would go in to check
 7   the rooms at 11:00, he would also see the syringes.
 8        Q.   Who's "he"?
 9        A.   Rocky.
10        Q.   How about Pete, did you ever tell Pete?
11        A.   Also, yes, I did.
12        Q.   Would he go in and check the rooms?
13        A.   He would not.  He didn't pay attention.  He
14   would just say that the people were crazy.
```

Page 18, line 1-6

```
1        Q.    (By Ms. Simms) Did you ever show them what
2   you found in the rooms?
3        A.    I'm sorry?
4        Q.    Did you ever show Rocky what you found in
5   the rooms?
6        A.    No.
```

Testimony from Grand Jury held on August 13, 2019, Matter 11  (M.C.)

Page 25, Lines 11-13

```
11        Q.    Okay.  When Peter was the manager, did you
12   notice any drug use going on at the hotel?
13        A.    A little.
```

Page 30, line 9-17

```
9        Q.    Okay.  We talked earlier about, when you
10   clean the rooms, you would find evidence of drug use
11   and condoms.  Did you ever tell the management what
12   you had found?
13        A.    Rocky would -- he saw it when he would
14   check the rooms.
15        Q.    How about Pete?
16        A.    He did, also, and he said it was business,
17   and he rented to everyone.
```

Mr. Patel further objects to paragraph 46 and asserts that none of these drug quantities
should be attributable to him as there is no proof that he had any specific knowledge or

participation in any of the underlying activity to which the amounts are credited.  He did not specifically admit to knowing of Craft or Horton's drug possession or sales and nor did he admit to knowing of any specific types of drugs or quantities.

He also asserts that he should not receive a 2-level enhancement for possession of a firearm. There is no evidence that Mr. Patel ever possessed a firearm, or that he had any knowledge of anyone else possessing a firearm in connection with drug distribution.

Mr. Patel further objects to all paragraphs 56-70, which have no relation to the computed base offense level. The allegations of sex trafficking contained within these paragraphs are very disputed and the government did not pursue those charges through a trial. Mr. Patel's plea does not pertain to these unproven allegations, which would have been thoroughly contested at trial. These paragraphs should either be stricken as not proven and not relevant or noted as contested in their entirety.

Mr. Patel also objects to paragraph 69. The facts are again "spun" in the light most favorable to the government. Mr. Patel leased the hotel to Mr. Bhula. He specified the fees which would be charged hotel guests and turned management over to Mr. Bhula. He never instructed Mr. Bhula on how to obtain money from or charge women who were participating in prostitution. This is a spin on the facts that leaves a completely wrong impression on what was a normal and customary lease and landlord arrangement.

Finally, Mr. Patel objects to paragraph 109 containing the guideline calculations of 168-210 months and contends that the computed guideline level is wildly wrong given his lack of knowledge and participation in the attributed drug quantities.

III.    **OBJECTION TO BASE OFFENSE LEVEL AND RELEVANT CONDUCT**

The PSR identifies the base offense level as a "34" due to the drugs that are being attributed to Mr. Patel and Bhula through the alleged conspiracy. Mr. Patel denies being involved in any criminal conspiracy. Most of the evidence cited as proof of a conspiracy is just evidence of a legitimate motel being operated.

U.S.S.G. § 1B1.3(a)(1)(B) defines relevant conduct in the case of a jointly undertaken criminal activity as all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity. It is the government's burden to establish these factors by a preponderance of the evidence. Relevant conduct for purposes of sentencing is not necessarily the same for every alleged participant in a conspiracy. The fact that some members of an alleged conspiracy may have been in possession of substantial amounts of narcotics does not automatically permit attribution of that amount to other members of that alleged conspiracy. Rather, the pertinent question is what acts and omissions the particular defendant was personally involved with and what acts of other co-conspirators were reasonably foreseeable to the defendant and occurred in furtherance of the conspiracy. *United States v. Evans*, 970 F.2d 663 (10th Cir. 1992).

Mr. Patel objects to the drug quantities being attributed to him. He submits that there is no evidence that he was aware that these drugs were being trafficked.  The government has not shown that they were in furtherance of any jointly undertaken criminal activity and nor that they were reasonably foreseeable to Patel.  Patel made no specific admissions to knowing of Craft's and Horton's drug possession and use.  Rather, his knowledge was tied to the testimony of the housekeepers, who told him about drug paraphernalia being found in rooms. The government is

attempting to attribute massive, specific quantities of drugs to Patel in the absence of any knowledge of such on his part.

Mr. Patel further objects to the two-level enhancement applied under § 2D1.1(b)(1) for possession of a dangerous weapon. No evidence has been presented by the government or mentioned in the PSR that Mr. Patel had any knowledge that Mr. Craft and Mr. Horton were in possession of firearms or that it was reasonably foreseeable to him that they possessed firearms. There is also zero evidence that Mr. Patel was ever in possession of any firearms.

## III. OBJECTION TO ENHANCEMENT AS AN ORGANIZER OR LEADER

In paragraph 4, the probation department determines that Mr. Patel should receive an adjustment for role in the offense, increasing his offense level by four levels. The probation department alleges that Mr. Patel was "an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive, warranting a four-level enhancement under Section 3B1.1(a)." PSR, ¶42. Mr. Patel objects to this adjustment as there is no evidence to show that he was an "organizer or leader" of the criminal activity involved in the count to which he pled. Moreover, Mr. Patel qualifies for a minimal role departure and requests that the Court depart three or four levels under §3B1.2.

The PSR states, without justification, "both Patel and Bhula were organizers/leaders in the criminal activity that involved five or more participants or was otherwise extensive." See PSR ¶ 34. However, the PSR does not engage in any analysis of the Section 3B1.1 factors that the United States Sentencing Commission describes in Application Note 4 to determine whether a defendant is an organizer, leader, manager, or supervisor in the criminal activity. Specifically, the non-exhaustive list of factors the Court is to consider include:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a

larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4). It is clear from this list of factors that an "organizer" or "leader" must exercise a significant degree of control and decision-making authority in the criminal activity. There is no evidence that Mr. Patel exercised any decision-making authority in relation to criminal activity taking place at the Best Choice Inn.

In *United States v. Litchfield*, 959 F. 2d 1514 (10th Cir. 1992), the court described the key elements in the applicability of §3B1.1 and whether a defendant's sentence should be enhanced. The Court stated that although the district court may have rightly determined that the defendant was "deeply involved in and essential to the success of the fraud and equated that finding with an organizer or leader," id. at 1522, the court ultimately held that control and organization over others involved was necessary.

In *United States v. Reid*, 911 F.2d 1456 (10th Cir. 1990), cert. denied, 112 L. Ed. 2d 1074, 111 S.Ct. 990 (1991), the Court stated:

> Key determinants of the applicability of 3B1.1 are control or organization: "the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates."

Id. at 1464 (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir 1990)); *see also United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990) ("some degree of control or organizational authority over others is required in order for section 3B1.1 to apply"); *United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir. 1990) ("Sentencing Commission intended 3B1.1 to apply only to situations where the offender organizes or leads criminally responsible individuals.").

There is absolutely no evidence that Mr. Patel acted as an organizer or leader in criminal activity. When applying the list of factors in the commentary, Mr. Patel does not qualify for this enhancement.  Within the factual basis of his plea agreement, Mr. Patel is characterized as a landlord and lessor who knew of personal use drug activity within the premises of the hotel. Mr. Patel admits to knowing that there was drug use within the hotel. This is it. Mere knowledge of crimes occurring and essentially turning a blind eye do not qualify as factors that make Mr. Patel an organizer or a leader. Probation does not point to any decision-making authority exercised by Mr. Patel  because there was none. Neither did he recruit accomplices, share in any profits beyond his role as a landlord or organize or plan any of this drug activity. At no time did Mr. Patel exercise control or authority over others involved in the drug activity or any other criminal activity at the hotel.

Not only should Mr. Patel's offense level not be enhanced for having an aggravating role, he should in fact receive a minimal role departure. Under the Guidelines, the defendant's sentencing range should be reduced if he or she had a mitigated role in the offense.

Importantly, this culpability comparison "is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of the elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. A, Introductory Commentary. That is, when evaluating the defendant's relative culpability – his or her "role" – the court must consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction [and] in preparation for that offense[.]" U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added).

Accordingly, "[a] defendant who is accountable . . . only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. n.3. For instance, "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §§ 1B1.3 only for the quantity of drugs the defendant personally transported or stored" may properly qualify for reduction. Id.

Moreover, "prosecutors need not identify, arrest, or try together all 'participants' in a scheme (and thus transform them into 'defendants') in order for the district court to consider their conduct when evaluating a particular defendant's relative role." Rojas-Millan, 234 F.3d 464, 473. Instead, "[this Court] read[s] § 3B1.2 as instructing [district] courts to look beyond the individuals brought before it to the overall criminal scheme when determining whether a particular defendant is a minor participant in the criminal scheme." Id.

The commentary to U.S.S.G. § 3B1.2 was amended on November 1, 2015, in response to the Sentencing Commission's finding that "mitigating role is applied inconsistently and more sparingly than the commission intended." USSG app. C amend. 794 (2015). The Commission was obviously concerned that courts were being discouraged from applying the adjustment in otherwise appropriate circumstances. Id.

Among the changes to the application note, the commission added a non-exhaustive list of factors the court should consider when applying the adjustment. The Commission determined that "a list of factors will give a common framework for determining whether to apply a mitigating role adjustment (and, if so, the amount of the adjustment) and will help promote consistency." Id. The new commentary also provides as an example "that a defendant who does not have a proprietary

interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for a mitigating role." Id. 21

When analyzing Mr. Patel's role in terms of Application Note 3(C), he plainly meets the factors the Sentencing Commission deems important and determinative. As to the degree to which Mr. Patel understood the scope and structure of the criminal activity, Mr. Patel suspected and knew that there was personal use drug activity within the Best Choice Inn. There is no evidence to indicate he knew anything more than others were using. He, himself, did not engage in any of this activity. Mr. Patel was not involved in any planning of this illegal activity and once again, had no decision-making authority. Mr. Patel did not participate, nor was he responsible for this activity. Mr. Patel, when compared to those who truly were engaging in drug-related criminal activity, had a minimal role and should receive a three or four level downward departure.  Much of the time frame of the conspiracy, Patel wasn't even in New Mexico and was in Alabama. For all these reasons, he should not receive an aggravating role and instead should receive a mitigating role.

Counsel will file a separate sentencing motion in which they will seek a downward variance on many of these same grounds noted above.

Respectfully submitted,

*/s/ Jason Bowles*
Jason Bowles
Bowles Law Firm
4811 Hardware Drive, N.E., Bldg D, Suite 5
Albuquerque, N.M.  87109
Telephone: (505) 217-2680
Email: jason@bowles-lawfirm.com

-and-

Robert J. Gorence
Gorence Law Firm
300 Central Ave., Suite 1000E
Albuquerque, NM 87102
Phone: (505) 244-0214
Facsimile: (505) 244-0888
Email: gorence@golaw.us

I hereby certify that a true and correct copy
of the foregoing was electronically submitted
this 1st day of November, 2023 to:

Counsel Listed through the CM/ECF Filing System

*/s/ Jason Bowles*
Jason Bowles
Bowles Law Firm