FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 1 8 2024

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Petitioner,

v.

                                    Cause No. 1:19-cr-01631-DHU

PRAGNESHJUMAR R. PATEL, a.k.a. "Pete Patel,"

      Defendant.

and

RIVERSTONE BANK, SUCCESSOR BY MERGER TO
FIRST STATE BANK,
      Third-Party Petitioner in Interest

## THIRD PARTY RIVERSTONE BANK'S VERIFIED PETITION OF INTEREST AND PRIORITY OF INTEREST IN PROPERTY

COMES NOW Petitioner, Riverstone Bank, successor by merger to First State Bank of Colorado Springs, a Branch of First State Bank ("Petitioner," or "Lender"), by and through its attorneys, Giddens & Gatton Law, P.C. (Elizabeth V. Friedenstein), and for its Verified Petition of Interest and Priority of Interest in Property states:

1.      This petition is brought pursuant to Fed. R. Crim. P. 32.(c)(2) and 21 U.S.C. § 853(n) to seek this court to adjudicate the validity of Petitioner's priority secured interest in the forfeited property.

2.      Petitioner, Riverstone Bank hereby claims a first lien position priority secured interest in the forfeited property.

3.      Petitioner, Riverstone Bank is a Nebraska state bank. On November 5, 2021, the Secretary of State of the State of Nebraska certified that First State Bank, Scottsbluff, Nebraska

merged into Riverstone Bank. A true and correct copy of the certificate of merger is attached as **Exhibit 8**.

4.      On or about September 29, 2017, Saishivam Lodging, LLC, Pragneshjumer R. Patel (Defendant), and Rakshaben R. Patel executed and delivered to Petitioner's predecessor, First State Bank of Colorado Springs, a branch of First State Bank, a Promissory Note ("Note"), representing a loan from First State Bank to said Defendants in the principal sum of $1,048,000.00, bearing interest at a variable rate. A true and correct copy of the Note is attached as **Exhibit 1**, and incorporated by reference herein.

5.      Owner of the property, Saishivam Lodging, LLC secured the Note by entering into a Deed of Trust ("Deed of Trust") on the property, commonly known as 7640 Central Avenue SE, Albuquerque, NM 87108-2145 ("the Property"), on or about September 29, 2017. The Deed of Trust was recorded on September 29, 2017, as Document No. 2017094179, in the real property records of Bernalillo County, New Mexico. A true and correct copy of the Deed of Trust is attached as **Exhibit 2** and is incorporated by reference herein.

6.      Defendant Saishivam Lodging, LLC further secured the Note by entering into an Assignment of Rents ("Assignment of Rents"), on or about September 29, 2017. The Assignment of Rents was recorded On September 29, 2017, as Document No. 2017094180, in the real property records of Bernalillo County, New Mexico. A true and correct copy of the Assignment of Rents is attached as **Exhibit 3** and is incorporated by reference herein.

7.      On January 23, 2020, the Borrowers Saishivam Lodging, LLC, Pragneshjumer R. Patel, and Rakshaben R. Patel entered into a Change in Terms Agreement ("CITA 1"), acknowledging a principal amount of $982,480.61. A true and correct copy of the CITA 1 is attached as **Exhibit 4** and is incorporated by reference herein.

8.     On April 27, 2020, the Borrowers Saishivam Lodging, LLC, Pragneshjumer R. Patel, and Rakshaben R. Patel entered into a Change in Terms Agreement ("CITA 2"), acknowledging a principal amount of $974,273.04.  A true and correct copy of the CITA 2 is attached as **Exhibit 5** and is incorporated by reference herein.

9.     On July 22, 2020, the Borrowers Saishivam Lodging, LLC, Pragneshjumer R. Patel, and Rakshaben R. Patel entered into a Change in Terms Agreement ("CITA 3"), acknowledging a principal amount of $974,273.04.  A true and correct copy of the CITA 3 is attached as **Exhibit 6** and is incorporated by reference herein.

10.    On December 2, 2020, the Borrowers Saishivam Lodging, LLC, Pragneshjumer R. Patel, and Rakshaben R. Patel entered into a Change in Terms Agreement ("CITA 4"), acknowledging a principal amount of $964,446.43.  A true and correct copy of the CITA 4 is attached as **Exhibit 7** and is incorporated by reference herein.

11.    The Petitioner currently has possession of the original Note and is the proper party to enforce the Note, pursuant to Section 55-3-205, NMSA 1978.

12.    The Borrowers have defaulted under the terms of the Note.

13.    The United States District Court for the District of New Mexico has included a forfeiture allegation concerning the criminal allegations filed against Pragneshkumar R. Patel at Case No. 19- CR-01631. This forfeiture order includes, but is not limited to, the real estate described in the Deed of Trust and rents in the Assignment of Rents securing the Note.

14.    Since Borrowers are in Default, Petitioner is within its rights to accelerate the amount owed and demand payment in full.  As such, Petitioner provided notice of acceleration and demanded payment by letter to Borrowers on December 23, 2022.  True and correct copies of the

Notice of Default and Notice of Demand is attached as **Exhibit 9**, dated December 23, 2022. The Notice of Default is incorporated by reference herein.

15.     Petitioner in good faith believes itself insecure.

16.     Borrowers have failed to pay the accelerated Note, however, the tenants have maintained monthly payments under the Note to Petitioner.

17.     Pursuant to the Note, Deed of Trust, and Assignments of Rent, the Petitioner is entitled to an award of attorneys' fees, legal expenses incurred in connection with the enforcement of its rights, and post-judgment attorneys' fees and collection costs.

18.     Petitioner filed an action against Defendant and borrowers in the State of New Mexico, County of Bernalillo, Second Judicial District Court, as case no. D-202-CV-2023-00237. Since the filing of the action, the court has placed a stay on the action pending the determination of this Court as to Petitioner's interest in the property and the sale of the property.

19.     The United States of America by and through the Department of Justice, claims an interest in the Property subject to the Plaintiff's Deed of trust, by virtue of a Notice of Lis Pendens of the forfeiture action, recorded in the office of the Bernalillo County Clerk on June 24, 2019 as Document No. 2019052388. Such interest is junior to the Plaintiff's Deed of Trust.

20.     Upon information and belief, Saishivam Lodging LLC, a New Mexico limited liability company and Riana Hospitality, LLC, a New Mexico limited liability company, entered into a Lease/Purchase Agreement on February 1, 2020, and thereby Riana Hospitality, LLC may claim an interest in the property.  The Lease/Purchase Agreement has not been recorded in the real property records of Bernalillo County, New Mexico.  Such interest, if any, is junior to the Petitioner's Deed of Trust.

21.     Petitioner's Deed of Trust on the Property is valid, and is prior and paramount to the interests of the United States of America, Saishivam Lodging, LLC, Pragneshjumer R. Patel, Rakshaben R. Patel, and all other Petitioners that may come forward, and Petitioner is entitled to judgment validating its interest in the property and its priority to receive payment of the amounts owing to it from the proceeds of the sale of the property.

22.     As of the date of this Petition Saishivam Lodging, LLC, Pragneshjumer R. Patel (Defendant), and Rakshaben R. Patel are jointly and severally indebted to Petitioner for the following amounts:

| | |
|---|---|
| Principal Balance | $871,924.19 |
| Default Interest to of 18% through 10/31/2023 | $7,023.83 |
| Late charges | $0.00 |
| Escrow balance | ($33.66) |
| Attorney fees accrued through this matter and foreclosure action | $9,659.50 |
| | |
| **Total Amounts owed through 10/31/2023** | **$878,981.68** |

The default interest accrues on a daily interest rate of 18% totaling $435.96 per day.

**WHEREFORE**, Petitioner prays for judgment as follows pursuant to this Complaint:

A. As against the interests of the Petitioner:

a. That the sums prayed for and alleged to be secured by the Property are determined secured and that the Deed of Trust is a valid first lien on the real property described therein, and on the rents, issues, and profits of said real

property, if they exist, and all buildings and improvements thereon and fixtures attached thereto;

b. That the Deed of Trust be declared and adjudged to be a valid first lien, prior and paramount to any right, title, interest, lien, equity, or estate of the Defendant and any other Petitioner;

c. That the United States of America sells the property subject thereto with the proceeds first to be applied to the Petitioner's interest herein;

d. That if the proceeds of the sale do not satisfy Petitioner's interest in full, Petitioner will have a deficiency judgment against the Saishivam Lodging, LLC, Pragneshjumer R. Patel, and Rakshaben R. Patel, jointly and severally, for the deficiency;

e. For its costs incurred herein;

f. For its attorneys' fees, pursuant to the Note, Deed of Trust, and Assignment of Rents;

g. For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Giddens & Gatton Law, P.C.

*/s/ Elizabeth V. Friedenstein*
Elizabeth V. Friedenstein
10400 Academy, Suite 350
Albuquerque, NM 87111
(505) 271-1053 phone
elizabeth@giddenslaw.com
*Attorneys for Petitioner*

## VERIFICATION

STATE OF NEBRASKA      )
                           )ss.
COUNTY OF Scotts Bluff  )

I, Michael Downey, am CEO of Riverstone Bank and am hereby authorized to make the following declaration and verification.

1. I am of legal age and am competent to make this declaration based upon my personal knowledge.
2. I have read, know, and understand the contents of the foregoing Verified Petition of Interest and Priority of Interest in Property, and the statements therein are true to the best of my knowledge and belief.
3. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 26 day of October 2023.

RIVERSTONE BANK

By: Michael Downey
Its: CEO

This instrument was subscribed and sworn before me on October ___26___, 2023, by Michael Downey, as CEO of Riverstone Bank.

_____
Notary Public

My Commission Expires: _1-30-24_
(SEAL)



GENERAL NOTARY
State of Nebraska
Kathrync M. Herron
Comm. Exp. 1/30/24

Exhibit 1



## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,048,000.00 | 09-29-2017 | 10-01-2037 | 0076 | | 2035 | 719 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** Salshivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel
1635 Candelaria Road N.E.
Albuquerque, NM 87107-2114

**Lender:** First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

---

**Principal Amount: $1,048,000.00**          **Date of Note: September 29, 2017**

**PROMISE TO PAY.** Salshivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel ("Borrower") jointly and severally promise to pay to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Forty-eight Thousand & 00/100 Dollars ($1,048,000.00), together with interest on the unpaid principal balance from September 29, 2017, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 60 monthly consecutive principal and interest payments in the initial amount of $7,258.66 each, beginning November 1, 2017, with interest calculated on the unpaid principal balances using an initial discounted interest rate of 5.500% per annum based on a year of 360 days; and 180 monthly consecutive principal and interest payments in the initial amount of $7,378.52 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 4.250%), plus a margin of 1.500%, resulting in an initial interest rate of 5.760% per annum based on a year of 360 days. Borrower's final payment will be due on October 1, 2037 and will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this loan will be 5.500%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. **NOTICE:** Under no circumstances will the interest rate on this Note be less than 5.500% per annum or more than the maximum interest rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower shall pay a prepayment penalty equal to 5% of the outstanding principal balance in the first year after the date of this Agreement, 4% of the outstanding principal balance in the second year after the date of this Agreement, 3% of the outstanding principal balance in the third year after the date of this Agreement, 2% of the outstanding principal balance in the fourth year after the date of this Agreement, and 1% of the outstanding principal balance in the fifth year after the date of this Agreement. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full," "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska; Colorado Springs Office; 1776 South Nevada Avenue; Colorado Springs, CO 80905.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 24.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or

**PROMISSORY NOTE**
**(Continued)**

Loan No: ███0076                                                                                                          Page 2

forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of laws provisions. This Note has been accepted by Lender in the State of Colorado.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**ACCELERATED INTEREST.** In the event of failure to pay any installment of principal or interest hereunder when due, or in the event the entire balance hereunder is accelerated as a result of default under the repayment terms of this Note or the violation of the terms and covenants of the Deed of Trust or Mortgage or any other security instrument securing this Note, then interest shall be paid upon the outstanding principal balance at the rate of eighteen per cent (18%) per annum until the delinquent installment(s) of principal or the entire principal balance plus accrued interest is paid in full. In the event the balance hereunder is accelerated, a late penalty equal to six months interest at the contract interest rate on the entire principal balance then existing at the time of the acceleration may be charged by the Lender and shall be payable by the Borrower. In the event the balance is accelerated and the Borrower cures the arrearage before any sale pursuant to foreclosure, no late penalty will be charged or payable. In addition to all amounts due hereunder, Borrower agrees to pay all reasonable attorney fees and costs associated with the collection of amounts due under this Note.

Installments as provided in this Note and the Deed of Trust or Mortgage securing the same shall be due on the first day of each month and shall be considered delinquent after ten days. Should the ten day period end on a weekend or holiday such period shall be extended to the next business day.

**FINANCIAL INFORMATION.** Borrower shall provide Lender with annual financial statements and income tax returns and any other financial information that Lender may reasonably require.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80905.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

Loan No: ████0076

**PROMISSORY NOTE**
**(Continued)**

Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

SAISHIVAM LODGING, LLC

By: _____
Pragneshjumar R. Patel, Managing Member of
Saishivam Lodging, LLC

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging,
LLC

x _____
Pragneshjumar R. Patel, Individually

x _____
Rakshaben R. Patel, Individually

LaserPro, Ver. 17.1.0.023  Copr. D + H USA Corporation 1997, 2017.  All Rights Reserved.  - CO  W:\AppServland\LaserPro\CFI\LPL\D30.FC  TR-375694  PR-6

Exhibit 2

Doc #2017094179   eRecorded 09/29/2017 02:06:00 PM   Page 1 of 9
DTR   Rec Fee $25.00   Linda Stover, Bernalillo County

**RECORDATION REQUESTED BY:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**Return to:** 5725230
**Fidelity National Title
Insurance Co.**

**WHEN RECORDED MAIL TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**SEND TAX NOTICES TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

FOR RECORDER'S USE ONLY



**DEED OF TRUST**

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $1,046,000.00.

THIS DEED OF TRUST is dated September 20, 2017, among Sakshivam Lodging, LLC, a New Mexico limited liability company, whose address is 1635 Candelaria Road N.E., Albuquerque, NM, 87107-2114 ("Grantor"); First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, whose address is Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80905 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and, (referred to below as "Trustee").

CONVEYANCE AND GRANT. Grantor, for consideration paid, grants and conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Bernalillo County, State of New Mexico

Lot numbered One-A (1-A) in Block numbered One (1) of B.M. Moore Addition, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on July 1, 1993, in Plat Book 93C, Page 188

The Real Property or its address is commonly known as 7640 Central Avenue SE, Albuquerque, NM 87108-2148. If there is a conflict between the legal description and the Real Property address, the legal description shall control.

WITH MORTGAGE COVENANTS WITH POWER OF SALE.

CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

FUTURE ADVANCES. In addition to the Note, this Deed of Trust secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST AND IS UPON THE STATUTORY MORTGAGE CONDITION FOR THE BREACH OF WHICH IT IS SUBJECT TO FORECLOSURE AS PROVIDED BY LAW. THIS DEED OF TRUST IS GIVEN PURSUANT TO THE NEW MEXICO DEED OF TRUST ACT AS ADOPTED BY LAWS 1987, CHAPTER 87. ALL OF THE RIGHTS, POWERS AND REMEDIES OF A TRUSTEE AND OF A BENEFICIARY AS PROVIDED IN THE DEED OF TRUST ACT ARE INCORPORATED BY REFERENCE IN THIS DEED OF TRUST AS IS THE RIGHTS, POWERS AND REMEDIES MORE EXPRESSLY PROVIDED IN THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by



Recorded Electronically
ID 2017099174
County Bernalillo
Date 9-29-17  Time 2:04pm
Simplifile.com  800.460.5657

Return to: SP25230
Fidelity National Title
Insurance Co.

**RECORDATION REQUESTED BY:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**WHEN RECORDED MAIL TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**SEND TAX NOTICES TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

FOR RECORDER'S USE ONLY

### DEED OF TRUST

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $1,048,000.00.

**THIS DEED OF TRUST** is dated September 29, 2017, among Saishivam Lodging, LLC, a New Mexico limited liability company, whose address is 1635 Candelaria Road N.E., Albuquerque, NM 87107-2114 ("Grantor"); First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, whose address is Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80905 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** Grantor, for consideration paid, grants and conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Bernalillo County, State of New Mexico:

> Lot numbered One-A (1-A) in Block numbered One (1) of B.M. Moore Addition, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on July 1, 1993, in Plat Book 93C, Page 186

The Real Property or its address is commonly known as 7640 Central Avenue SE, Albuquerque, NM 87108-2145. If there is a conflict between the legal description and the Real Property address, the legal description shall control.

### WITH MORTGAGE COVENANTS WITH POWER OF SALE.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Deed of Trust secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST AND IS UPON THE STATUTORY MORTGAGE CONDITION FOR THE BREACH OF WHICH IT IS SUBJECT TO FORECLOSURE AS PROVIDED BY LAW. THIS DEED OF TRUST IS GIVEN PURSUANT TO THE NEW MEXICO DEED OF TRUST ACT AS ADOPTED BY LAWS 1987, CHAPTER 61. ALL OF THE RIGHTS, POWERS AND REMEDIES OF A TRUSTEE AND OF A BENEFICIARY AS PROVIDED IN THE DEED OF TRUST ACT ARE INCORPORATED BY REFERENCE IN THIS DEED OF TRUST AS IF THE RIGHTS, POWERS AND REMEDIES WERE EXPRESSLY PROVIDED IN THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by

| Loan No ████0076 | **DEED OF TRUST**<br>**(Continued)** | Page 2 |
|---|---|---|

exercise of a power of sale.

**NEW MEXICO DEED OF TRUST ACT REPRESENTATIONS AND WARRANTIES.** To induce Lender to extend the indebtedness to Grantor, Grantor hereby represents and warrants to Lender pursuant to the New Mexico Deed of Trust Act as adopted by Laws 1987, Chapter 61, that the Real Property does not include any of the following:

(A)  Any real estate used by Grantor for farming operations including farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry or livestock, and production of poultry or livestock products in an unmanufactured state; or

(B)  Oil and other liquid hydrocarbons, or gas, including casinghead gas, condensates and other gaseous petroleum substances, or coal or other mineral in, on or under real estate including patented and unpatented mining claims unless such minerals have not been severed from and are included with the surface estate.

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Deed of Trust, Borrower and Grantor shall pay to Lender all indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may (1)  remain in possession and control of the Property; (2)  use, operate or manage the Property; and (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that: (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a)  any breach or violation of any Environmental Laws, (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3)  Except as previously disclosed to and acknowledged by Lender in writing, (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Except as otherwise provided in Section 48-7-20 NMSA 1978, as amended,  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New Mexico law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments

Loan No      0076

**DEED OF TRUST
(Continued)**

Page 3

against the Property.

Notice of Construction.   Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

INSURANCE.   The amount specified for insurance as provided in the statutory mortgage condition is the full insurable value of the improvements on a replacement basis, but in no event less than the full insurable value of the Property. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days prior written notice to Lender.

Application of Proceeds.   Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, and subject to any applicable provisions of Section 48-7-10 NMSA 1978, as amended, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance.   Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and  (5)  the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES.   If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE.   The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title.   Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title.   Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws.   Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties.   All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

CONDEMNATION.   The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

Proceedings.   If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds.   If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.   The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges.   Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes.   The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust;  (3)  a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes.   If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS.   The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement.   This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and

**DEED OF TRUST**
**(Continued)**

Loan No: ████0076

Page 4

---

Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness, including without limitation all future advances, when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire

Loan No: 0076

**DEED OF TRUST**
**(Continued)**

Page 5

Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee or Lender or both shall have the right to exercise the power of sale in accordance with applicable law, or this Deed of Trust may be foreclosed in the manner provided by law for the foreclosure of mortgages on real property.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**Right of Redemption.** IF THE PROPERTY IS SOLD AT A FORECLOSURE SALE FOLLOWING A COURT ORDERED JUDICIAL FORECLOSURE OF THIS DEED OF TRUST, OR IS SOLD BY THE TRUSTEE PERSUANT TO THE TRUSTEE'S POWER OF SALE, THE REDEMPTION PERIOD AFTER SUCH SALE SHALL BE ONE (1) MONTH IN LIEU OF NINE (9) MONTHS.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Bernalillo County, State of New Mexico. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a

**DEED OF TRUST**
**(Continued)**

Loan No: ▮▮0076

Page 6

certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of New Mexico. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Deed of Trust has been accepted by Lender in the State of Colorado, and all necessary loan documents have been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of New Mexico as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, and its successors and assigns.

**Borrower.** The word "Borrower" means Salshivam Lodging, LLC; Pragneshkumar R. Patel; and Rakshaben R. Patel and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Salshivam Lodging, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed

Loan No: ___0076

**DEED OF TRUST**
**(Continued)**

Page 7

of Trust.

Lender. The word "Lender" means First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, its successors and assigns.

Note. The word "Note" means the promissory note dated September 28, 2017, **in the original principal amount of $1,048,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 4.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: 60 monthly consecutive principal and interest payments in the initial amount of $7,256.66 each, beginning November 1, 2017, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 5.500% per annum based on a year of 360 days; and 180 monthly consecutive principal and interest payments in the initial amount of $7,376.82 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 4.250%), plus a margin of 1.500%, resulting in an initial interest rate of 5.750% per annum based on a year of 360 days. Borrower's final payment will be due on October 1, 2037 and will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Note be less than 5.500% per annum or more than the maximum rate allowed by applicable law. The maturity date of this Deed of Trust is October 1, 2037.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property. The word "Property" also includes all existing or subsequently erected or affixed buildings, improvements and fixtures, all appurtenances, all rights relating to the Real Property (including minerals, oil, gas, water, and the like), and all ditch rights (including stock in utilities with ditch or irrigation rights).

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS. GRANTOR BY SIGNING THIS DEED OF TRUST EXPRESSLY AGREES TO SUBJECT THE PROPERTY TO THE NEW MEXICO DEED OF TRUST ACT.

GRANTOR:

SAISHIVAM LODGING, LLC

By: _____
Pragneshkumar R. Patel, Managing Member of Saishivam Lodging, LLC

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging, LLC

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _New Mexico_ )
                                          ) SS
COUNTY OF _Bernalelle_ )

This instrument was acknowledged before me on _September 29_ , 20_17_ by Pragneshkumar R. Patel, Managing Member of Saishivam Lodging, LLC and Rakshaben R. Patel, Member of Saishivam Lodging, LLC, on behalf of Saishivam Lodging, LLC, a limited liability company.

My commission expires: _____

_____
Notary Public

OFFICIAL SEAL
Danielle Fallor
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _____

---

Exhibit 3

Doc #2017094180  eRecorded 09/29/2017 02:06:00 PM  Page 1 of 6
ASSN  Rec Fee: $25.00  Linda Stover Bernalillo County

Return to: SP26230
Fidelity National Title
Insurance Co.

**RECORDATION REQUESTED BY:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80906

**WHEN RECORDED MAIL TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80906

**SEND TAX NOTICES TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80906

FOR RECORDER'S USE ONLY



## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated September 29, 2017, is made and executed between Selahvein Lodging, LLC, a New Mexico limited liability company, whose address is 1635 Candelaria Road N.E., Albuquerque, NM, 87107-2114 (referred to below as "Grantor") and First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, whose address is 1776 South Nevada Avenue, Colorado Springs, CO 80906 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Bernalillo County, State of New Mexico:

Lot numbered One-A (1-A) in Block numbered One (1) of B.M. Moore Addition, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on July 1, 1993, in Plat Book 93C, Page 186

The Property or its address is commonly known as 7840 Central Avenue SE, Albuquerque, NM, 87108-2145. The Property tax identification number is ___

CROSS-COLLATERALIZATION. In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable; ___

FUTURE ADVANCES. In addition to the Note, this Assignment secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that:

Ownership. Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign. Grantor has the full right, power, and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment. Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer. Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Agreement.

Recorded Electronically
ID 201 109911180
County Bernalillo City
Date 09-29-17 Time 2:06p
Simplifile.com 800.460.5657

Return to: SP25230
**Fidelity National Title
Insurance Co.**

**RECORDATION REQUESTED BY:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**WHEN RECORDED MAIL TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**SEND TAX NOTICES TO:**
First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

**FOR RECORDER'S USE ONLY**



## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated September 29, 2017, is made and executed between Saishivam Lodging, LLC, a New Mexico limited liability company, whose address is 1635 Candelaria Road N.E., Albuquerque, NM 87107-2114 (referred to below as "Grantor") and First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, whose address is 1776 South Nevada Avenue, Colorado Springs, CO 80905 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Bernalillo County, State of New Mexico:

Lot numbered One-A (1-A) in Block numbered One (1) of B.M. Moore Addition, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on July 1, 1993, in Plat Book 93C, Page 186

The Property or its address is commonly known as 7640 Central Avenue SE, Albuquerque, NM 87108-2145. If there is a conflict between the legal description and the Real Property address, the legal description shall control.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

Ownership. Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign. Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment. Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer. Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as

## ASSIGNMENT OF RENTS
(Continued)

Page 2

Loan No: 0076

provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of New Mexico and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written

Loan No:  0076

**ASSIGNMENT OF RENTS**
(Continued)

Page 3

notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Right of Redemption. IF THIS ASSIGNMENT IS FORECLOSED, THE REDEMPTION PERIOD AFTER JUDICIAL SALE SHALL BE ONE (1) MONTH IN LIEU OF NINE (9) MONTHS.**

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of New Mexico. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Colorado.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Assignment. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3)  The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 0076

Page 4

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of New Mexico as to all indebtedness secured by this Assignment.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in a Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Saishivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Saishivam Lodging, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Assignment.

**Lender.** The word "Lender" means First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, its successors and assigns.

**Note.** The word "Note" means the promissory note dated September 29, 2017, in the original principal amount of $1,048,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 4.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: 60 monthly consecutive principal and interest payments in the initial amount of $7,258.86 each, beginning November 1, 2017, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 5.500% per annum based on a year of 360 days; and 180 monthly consecutive principal and interest payments in the initial amount of $7,378.52 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 4.250%), plus a margin of 1.500%, resulting in an initial interest rate of 5.750% per annum based on a year of 360 days. Borrower's final payment will be due on October 1, 2037 and will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Note be less than 5.500% per annum or more than the maximum rate allowed by applicable law.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON SEPTEMBER 29, 2017.

GRANTOR:

SAISHIVAM LODGING, LLC

By: _____
Pragneshjumar R. Patel, Managing Member of Saishivam Lodging, LLC

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging, LLC

**ASSIGNMENT OF RENTS**
**(Continued)**

Loan No: ████ 0076

Page 5

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF New Mexico _____ )
                                        ) SS
COUNTY OF Bernalillo _____ )

This Instrument was acknowledged before me on September 29, 2017 _____, 20 17 by Pragneshkumar R. Patel, Managing Member of Salshivam Lodging, LLC and Rakshaben R. Patel, Member of Salshivam Lodging, LLC, on behalf of Salshivam Lodging, LLC, a limited liability company.

OFFICIAL SEAL
**Danielle Fattor**
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _____

My commission expires _____

_Danielle Fattor_
Notary Public

---

LaserPro, Ver. 17.1.0.023    Copr.   D+H   USA   Corporation   1997,   2017.      All   Rights   Reserved.      -   NM/CO
W:\Applications\LaserPro\CFI\LPL\G14.FC TR-378598 PR-8

2/18/2020 1:47:00 PM

Exhibit 4



## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $982,480.61 | 09-29-2017 | 11-01-2017 | 0076 | | 2015 | 716 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Salahivam Lodging, LLC; Pragnashjumar R. Patel
and Rakehaben R. Patel
7840 Central Avenue SE
Albuquerque, NM 87107-2145

**Lender:** First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1775 South Nevada Avenue
Colorado Springs, CO 80905

---

**Principal Amount: $982,480.61**          Date of Agreement: January 23, 2020

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A promissory note dated September 29, 2017 in the original principal amount of $1,048,000.00.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7840 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**DESCRIPTION OF CHANGE IN TERMS.** Payments shall be due according to the schedule shown below. In addition to the principal and interest payments, Borrower shall make a monthly escrow deposit for the payment of real estate taxes and hazard insurance. The maturity date shall be extended to November 1, 2037.

**PROMISE TO PAY.** Salahivam Lodging, LLC; Pragnashjumar R. Patel; and Rakehaben R. Patel ("Borrower") jointly and severally promise to pay to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Eighty-two Thousand Four Hundred Eighty & 61/100 Dollars ($982,480.61), together with interest on the unpaid principal balance from December 1, 2019, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment change resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: one interest payment on January 1, 2020, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 33 monthly consecutive principal and interest payments in the initial amount of $7,258.68 each, beginning February 1, 2020, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 180 monthly consecutive principal and interest payments in the initial amount of $7,831.61 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 4.750%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 6.250% per annum based on a year of 360 days; and one principal and interest payment of $7,520.40 on November 1, 2037, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 4.750%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 6.250% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this loan has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index. Lender may also amend and adjust the margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the index are described in the "Payments" section. The change to the margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after posting written notice to Borrower without any action or consent of the Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.750% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.500% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: Lender is entitled to a prepayment penalty if such a penalty was provided for in the original promissory note. In that event, the terms of the prepayment penalty shall remain unchanged and in full force and effect. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska; Colorado Springs Office; 1775 South Nevada Avenue; Colorado Springs, CO 80905.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower,

2/18/2020 1:47:02 PM

Loan No 0076

## CHANGE IN TERMS AGREEMENT
(Continued)

Page 2

the appointment of a receiver for any part of Borrower's property; any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Deed of Trust and Assignment of Rents dated September 28, 2017 for real property located at 7840 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to Lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be changed by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First State Bank of Colorado Springs, a Branch of First State Bank, Scottsbluff, Nebraska, Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80906.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of this Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other Indebtedness owing by such other Borrower. Borrower and any other person here signs, guarantees or endorses this Agreement, to the extent allowed by law, waives presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

2/18/2020 1:47:03 PM

Loan No: ___0078

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 3

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

SAISHIVAM LODGING, LLC

By: _____
Pragneshkumar R. Patel, Managing Member of Saishivam Lodging, LLC

X _____
Pragneshkumar R. Patel, Individually

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging, LLC

X _____
Rakshaben R. Patel, Individually

LENDER:

FIRST STATE BANK OF COLORADO SPRINGS, A BRANCH OF FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA

X _____
Authorized Signer

LaserPro, Ver. 11.1.0.08  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - NE  N:\Apps\harland\cfi\LPL\D20C.FC  TR-14712  PR-35

5/27/2020 9:40:25 AM

Exhibit 5



# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $974,273.04 | 09-29-2017 | 02-01-2038 | 0076 | | 2035 | 719 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Saishivam Lodging, LLC; Pragnashjumar R. Patel;
and Rakshaben R. Patel
7640 Central Avenue SE
Albuquerque, NM 87107-2145

**Lender:** First State Bank of Colorado Springs, a branch of First
State Bank, Scottsbluff, Nebraska
Colorado Springs Office
1776 South Nevada Avenue
Colorado Springs, CO 80905

---

**Principal Amount: $974,273.04**                                       **Date of Agreement: April 27, 2020**

DESCRIPTION OF EXISTING INDEBTEDNESS. A promissory note dated September 29, 2017 in the original principal amount of $1,048,000.00 as modified by a Change In Terms Agreement dated January 23, 2020.

DESCRIPTION OF COLLATERAL. A Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

DESCRIPTION OF CHANGE IN TERMS. The May, June, and July principal, interest, and escrow payments shall be deferred. Beginning August 1, 2020, Borrower shall make payments according to the schedule shown below. In addition, Borrower will make a monthly escrow deposit for the payment of real estate taxes and hazard insurance. The escrow payment will be recalculated at the end of the deferral period. If any tax or insurance payments comes due during the deferral period and the escrow balance is not sufficient to pay what is due, Borrow will be responsible for the payment of those items. The maturity date shall be extended to February 1, 2038. For the months of August, September, and October, 2020, Borrower shall also make additional interest payments in the amount of $4,515.03 per month. Upon execution of this Agreement, Borrower shall pay a flood determination fee in the amount of $15.00.

PROMISE TO PAY. Saishivam Lodging, LLC; Pragnashjumar R. Patel; and Rakshaben R. Patel ("Borrower") jointly and severally promise to pay to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Seventy-four Thousand Two Hundred Seventy-three & 04/100 Dollars ($974,273.04), together with interest on the unpaid principal balance from July 1, 2020, until paid in full.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using rates described in this paragraph: 27 monthly consecutive principal and interest payments in the initial amount of $7,257.55 each, beginning August 1, 2020, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 123 monthly consecutive principal and interest payments in the initial amount of $7,257.58 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum rate limitations for this loan, resulting in an initial interest rate of 5.800% per annum based on a year of 360 days; and one principal and interest payment of $7,256.60 on February 1, 2038, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum rate and maximum rate limitations for this loan, resulting in an initial interest rate of 5.500% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this loan has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index. Lender may also amend and adjust any margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the Index are described in the "Payments" section. The change to the margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.500% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: Lender is entitled to a prepayment penalty if such a penalty was provided for in the original promissory note. In that event, the terms of the prepayment penalty shall remain unchanged and in full force and effect. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.

5/27/2020 9:40:26 AM

Loan No: 0076

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 2

false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80905.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or

5/27/2020 9:40:26 AM

Loan No: ████0076

## CHANGE IN TERMS AGREEMENT
### (Continued)

Page 3

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

SAISHIVAM LODGING, LLC

By: _____
Pragneshjumar R. Patel, Managing Member of
Saishivam Lodging, LLC

X _____
Pragneshjumar R. Patel, Individually

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging,
LLC

X _____
Rakshaben R. Patel, Individually

**LENDER:**

FIRST STATE BANK OF COLORADO SPRINGS, A BRANCH OF FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA

X _____
Authorized Signer

LaserPro, Ver. 20.1.0.034  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - CO  W:\Applications\LaserPro\CFI\LPL\D20C.FC  TR-317938  PR-79



8/18/2020 10:25:25 AM        Exhibit 6

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $974,273.04 | 09-28-2017 | 05-01-2038 | | 0769 | | 3035 | 5719 |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| **Borrower:** | Salshivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel | **Lender:** | First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska |
|---|---|---|---|
| | 7640 Central Avenue SE | | Colorado Springs Office |
| | Albuquerque, NM 87107-2145 | | 1778 South Nevada Avenue |
| | | | Colorado Springs, CO 80906 |

**Principal Amount: $974,273.04**                                      **Date of Agreement: July 22, 2020**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A promissory note dated September 28, 2017 in the original principal amount of $1,048,000.00 as modified by Change in Terms Agreements dated January 23, 2020 and April 27, 2020.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust and Assignment of Rents dated September 28, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**DESCRIPTION OF CHANGE IN TERMS.** The August, September, and October principal, interest, and escrow payments shall be deferred. Beginning November 1, 2020, Borrower shall make payments according to the schedule shown below. In addition, Borrower will make a monthly escrow deposit for the payment of real estate taxes and hazard insurance. The escrow payment will be recalculated at the end of the deferral period. If any tax or insurance payments comes due during the deferral period and the escrow balance is not sufficient to pay what is due, Borrower will be responsible for the payment of those items. The maturity date shall be extended to May 1, 2038. For the months of November and December, 2020 and January 2021, Borrower shall also make additional interest payments in the amount of $4,364.66 per month. Upon execution of this Agreement, Borrower shall make an interest payment in the amount of $13,545.06.

**PROMISE TO PAY.** Salshivam Lodging, LLC; Pragneshjumar R. Patel and Rakshaben R. Patel ("Borrower") jointly and severally promise to pay to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Seventy-four Thousand Two Hundred Seventy-three & 04/100 Dollars ($974,273.04), together with interest on the unpaid principal balance from October 1, 2020, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 24 monthly consecutive principal and interest payments in the initial amount of $7,257.53 each, beginning November 1, 2020, with interest calculated on the unpaid principal balances using an interest rate of 6.600% per annum based on a year of 360 days; 156 monthly consecutive principal and interest payments in the initial amount of $7,258.96 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.500% per annum based on a year of 360 days; and one principal and interest payment of $7,153.74 on May 1, 2038, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.500% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this loan has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index. Lender may also amend and adjust any margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the index are described in the "Payments" section. The change in the margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any consent or consent of the Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The index currently is 3.250% per annum. The interest rate to be applied to the unpaid principal balance during this loan will be at the rate of rates set forth herein in the "Payments" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.500% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: Lender is entitled to a prepayment penalty if such a penalty was provided for in the original promissory note. In that event, the terms of the prepayment penalty shall remain unchanged and in full force and effect. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska; Colorado Springs Office; 1778 South Nevada Avenue; Colorado Springs, CO 80906.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, Colorado Springs Office, 1776 South Nevada Avenue, Colorado Springs, CO 80906.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 3

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THIS AGREEMENT.

BORROWER:

SAISHIVAM LODGING, LLC

By: _____
Pragneshkumar R. Patel, Managing Member of
Saishivam Lodging, LLC

By: _____
Rakshaben R. Patel, Member of Saishivam Lodging,
LLC

X _____
Pragneshkumar R. Patel, Individually

X _____
Rakshaben R. Patel, Individually

LENDER:

FIRST STATE BANK OF COLORADO SPRINGS, A BRANCH OF FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA

X _____
Authorized Signer

12/18/2020 1:11:11 PM

Exhibit 7

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $964,446.43 | 09-29-2017 | 08-01-2038 | [redacted]0076 | | [redacted]2035 | 719 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Saishivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel
7640 Central Avenue SE
Albuquerque, NM 87107-2148

**Lender:** First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska
Colorado Springs Office
3216 W. Colorado Ave.
Colorado Springs, CO 80904

**Principal Amount: $964,446.43** **Date of Agreement: December 2, 2020**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A promissory note dated September 29, 2017 in the original principal amount of $1,048,000.00 as modified by Change in Terms Agreements dated January 23, 2020; April 27, 2020; and July 22, 2020.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust and Assignment of Rents dated September 29, 2017 for real property located at 7640 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**DESCRIPTION OF CHANGE IN TERMS.** The December, January, and February principal payments shall be deferred, however, Borrower will continue to make monthly interest and escrow payments during December, January and February. Beginning March 1, 2021, Borrower shall make payments according to the schedule shown below. The maturity date shall be extended to August 1, 2038

The escrow payment will be recalculated at the end of the deferral period. If any tax or insurance payments comes due during the deferral period and the escrow balance is not sufficient to pay what is due, Borrower will be responsible for the payment of those items.

**PROMISE TO PAY.** Saishivam Lodging, LLC; Pragneshjumar R. Patel; and Rakshaben R. Patel ("Borrower") jointly and severally promise to pay to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Sixty-four Thousand Four Hundred Forty-six & 43/100 Dollars ($964,446.43), together with interest on the unpaid principal balance from November 1, 2020, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 3 monthly consecutive interest payments, beginning December 1, 2020, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 20 monthly consecutive principal and interest payments in the initial amount of $7,202.37 each, beginning March 1, 2021, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 189 monthly consecutive principal and interest payments in the initial amount of $7,202.36 each, beginning November 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.500% per annum based on a year of 360 days; and one principal and interest payment of $7,203.79 on August 1, 2038, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.500% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this loan has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index. Lender may also amend and adjust any margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the Index are described in the "Payments" section. The change to the margin may be a positive or negative value, or zero. In making those amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.500% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: Lender is entitled to a prepayment penalty if such a penalty was provided for in the original promissory note. In that event, the terms of the prepayment penalty shall remain unchanged and in full force and effect. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska; Colorado Springs Office; 3216 W. Colorado Ave.; Colorado Springs, CO 80904.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of El Paso County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Deed of Trust and Assignment of Rents dated September 28, 2017 for real property located at 7840 Central Avenue SE, Albuquerque, New Mexico and all Security Agreements given to lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inures to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska, Colorado Springs Office, 3215 W. Colorado Ave., Colorado Springs, CO 80904.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

12/18/2020 1:11:12 PM

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 3

Loan No ▮▮0076

PRIOR TO SIGNING THIS AGREEMENT. EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.
INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

SAISHIVAM LODGING, LLC

By: _____
Pragneshjumar R. Patel, Managing Member of
Saishivam Lodging, LLC

By: _____
Rakshabon R. Patel, Member of Saishivam Lodging,
LLC

X _____
Pragneshjumar R. Patel, Individually

X _____
Rakshabon R. Patel, Individually

**LENDER:**

FIRST STATE BANK OF COLORADO SPRINGS. A BRANCH OF FIRST STATE BANK. SCOTTSBLUFF, NEBRASKA

X _____
Authorized Signer

Exhibit 8

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") is dated as of June 22, 2021, by and between Riverstone Bank, a Nebraska state bank ("Riverstone"), and First State Bank, a Nebraska state bank ("First State").

The Boards of Directors of the respective banks deem it desirable and in the best interests of their respective banks and shareholders that First State merge into Riverstone (the "Merger"), upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, undertakings, representations and warranties contained herein, the parties agree as follows:

### I. THE MERGER

1.01   **The Merger.**  Subject to the terms and conditions of this Agreement:

(a)     First State shall be merged with and into Riverstone in accordance with the laws of the State of Nebraska, with Riverstone being the surviving corporation in the Merger (sometimes referred to hereinafter as the "Surviving Corporation"), and the separate existence of First State shall cease.  The Merger shall become effective (the "Effective Time") as specified in the Articles of Merger filed by the Surviving Corporation with the Secretary of State of the State of Nebraska.

(b)     The Surviving Corporation shall by operation of law possess all of the rights, privileges, immunities and franchises of First State.

(c)     The Articles of Incorporation of Riverstone in effect immediately prior to the Effective Time shall be the Articles of Incorporation of the Surviving Corporation, until thereafter amended in accordance with law.

(d)     The Bylaws of Riverstone in effect immediately prior to the Effective Time shall be the Bylaws of the Surviving Corporation, until thereafter amended in accordance with law.

1.02   **Conversion of Shares of First State Stock**.  Each of the shares of capital stock of First State that is issued and outstanding immediately prior to the Effective Time shall thereupon and without any further action automatically be canceled.

1.03   **Outstanding Shares of Riverstone Stock**.  As of the Effective Time, by virtue of the Merger without any action on the part of the holders thereof each share of capital stock of Riverstone that is issued and outstanding immediately prior to the Effective Time, shall continue immediately after the Effective Time to constitute one share of capital stock of Riverstone.

1.04   **Board of Directors and Officers**.  At the Effective Time, the directors and officers of Riverstone immediately prior to the Effective Time shall continue as the directors and officers, respectively, of the Surviving Corporation and shall hold office in accordance with the Surviving Corporation's Bylaws and applicable law.

## II.  CONDITIONS, TERMINATION, AMENDMENT AND WAIVER

2.01   **Conditions.**  Consummation of the Merger and the transactions contemplated thereby shall be subject to:

(a)   Receipt of requisite approval of the shareholders of the parties hereto;

(b)   Receipt of all required regulatory approvals; and

(c)   Closing of the Agreement for Purchase of Shares dated April 30, 2021 (the "Holding Company Purchase Agreement"), between First State Bancshares, Inc., a Nebraska corporation, as Seller, and Tri Valley Bancshares, a Nebraska corporation, as Buyer.

2.02   **Termination.**  This Agreement shall terminate automatically if the Holding Company Purchase Agreement is terminated for any reason.  In addition, this Agreement may be terminated at any time prior to the Effective Time whether before or after shareholder approval:

(a)   By mutual consent of the parties hereto; or

(b)   By either party hereto if any event shall have occurred which renders the conditions set forth in Section 2.01 of this Agreement incapable of fulfillment.

2.03   **Effect of Termination**.  In the event of termination of this Agreement as provided in Section 2.02 above, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto or their respective officers, directors or shareholders.

2.04   **Amendment**.  This Agreement may be amended by the parties hereto by action taken by their respective Boards of Directors at any time, by an instrument in writing signed on behalf of each of the parties hereto.

2.05   **Waiver**.  Any term or provision of this Agreement (other than requirements for regulatory approvals) may be waived in writing at any time by the party which is, or whose shareholders are, entitled to the benefits thereof.

## Ill.  GENERAL PROVISIONS

3.01   **Closing**.  Unless this Agreement shall have been terminated and the Merger herein contemplated shall have been abandoned, a closing (the "Closing") will be held as soon as practicable after receipt of all approvals, at a location to be agreed upon by the parties hereto.

3.02   **Binding Agreement.**  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by their respective duly authorized officers on the date first above written.

RIVERSTONE BANK

By: _____

Name: _____Stephen Glade_____

Title: _____President / CEO_____

FIRST STATE BANK

By: _____

Name: _____

Title: _____

4829-3874-3784, v. 1

3

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by their respective duly authorized officers on the date first above written.

RIVERSTONE BANK

By: _____
Name:  Stephen Glade
Title: President

FIRST STATE BANK

By: _____
Name: Michael Downey
Title: President

3

# STATE OF NEBRASKA

United States of America,    ⦙ ss.                          Secretary of State
State of Nebraska            ⦙                              State Capitol
                                                           Lincoln, Nebraska

## I, Robert B. Evnen, Secretary of State of the State of Nebraska, do hereby certify that

**the attached is a true and correct copy of Articles of Merger of**

**FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA**

**with registered office located in SCOTTSBLUFF, Nebraska,  merging into**

**RIVERSTONE BANK**

**with registered office located in EAGLE, Nebraska as filed in this office on November 5, 2021.**

*This certificate is not to be construed as an endorsement, recommendation, or notice of approval of the entity's financial condition or business activities and practices.*

In Testimony Whereof,



I have hereunto set my hand and affixed the Great Seal of the State of Nebraska on this date of

**November 5, 2021**

Secretary of State

NE Sec of State - Robert B. Evnen
Filing Document #: 2111298307    Pages: 1
Company Name:
Filing Date and Time: 11/05/2021 03:49 PM

**ARTICLES OF MERGER**
**OF**
**FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA**
**WITH AND INTO**
**RIVERSTONE BANK**

Pursuant to Section 21-2,166 of the Nebraska Model Business Corporation Act, Riverstone Bank, a Nebraska banking corporation with its principal office in Eagle, Nebraska, and First State Bank, Scottsbluff, Nebraska, a Nebraska banking corporation with its principal office in Scottsbluff, Nebraska, set forth the following Articles of Merger:

1. The names of the parties to the merger are First State Bank, Scottsbluff, Nebraska, a Nebraska corporation (the "Merged Corporation"), and Riverstone Bank, a Nebraska corporation (the "Surviving Corporation").

2. Pursuant to the Agreement and Plan of Merger between the Merged Corporation and the Surviving Corporation (the "Plan of Merger"), the Surviving Corporation will be the surviving corporation in the merger. The Surviving Corporation will be governed by the provisions of the Nebraska Model Business Corporation Act.

3. The Articles of Incorporation of the Surviving Corporation are not amended by the Plan of Merger, and no new corporation is created as a result of the Plan of Merger.

4. The Plan of Merger required the approval of the shareholders of the Merged Corporation, and the Plan of Merger was duly approved by the shareholders of the Merged Corporation in the manner prescribed by the Nebraska Model Business Corporation Act and the Merged Corporation's Articles of Incorporation.

5. Pursuant to Section 21-2,164(8) of the Nebraska Model Business Corporation Act, the Plan of Merger did not require the approval of the shareholders of the Surviving Corporation.

6. The merger does not involve a foreign corporation or eligible entity.

Dated this 5th day of November, 2021.

RIVERSTONE BANK

By: _____
Stephen Glade, President

FIRST STATE BANK, SCOTTSBLUFF, NEBRASKA

By: _____
Michael Downey, President

4890-3473-5105, v. 1

Exhibit 9

# JAMES P. MEURET
### ATTORNEY AT LAW

---

**103 Franklin St.**
**PO Box 429**
**Brunswick, NE 68720**

**ph. (402) 518-3016**
**fax (402) 518-3141**
**jamesmeuret@gmail.com**

Friday, December 23, 2022

**VIA CERTIFIED MAIL AND US MAIL, POSTAGE PREPAID**
Saishivam Lodging, LLC
Attn:  Rakshaben R. Patel, Reg. Agent
1635 Candelaria Rd NE
Albuquerque, NM 87107

Pragneshkumar R. Patel
4168 Heron Lakes Dr.
Mobile, AL 36693

Rakshaben R. Patel
1635 Candelaria Rd NE
Albuquerque, NM 87107

**RE:     Notice of Default**
         **Notice of Demand**

To Whom it May Concern,

My name is James Meuret, and I am an attorney for Riverstone Bank.  Riverstone Bank is the successor in interest to First State Bank of Colorado Springs, a branch of First State Bank, Scottsbluff, Nebraska. For ease of reference, I will refer to my client herein as "Bank" or "the Bank."

### Notice of Default

On or about September 29, 2017, Saishivam Lodging, LLC, Pragneshkumar R. Patel, and Rakshaben R. Patel each signed a certain promissory note (loan number ███0076) ("Note") in the amount of $1,048,000.00 in favor of the Bank.  The Note is secured by a Deed of Trust dated September 29, 2017 ("Deed of Trust").

Under the terms of the Note, the following are each an "Event of Default":

      1.      Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, reposition or any other method, by any creditor or Borrower or by any governmental agency against any collateral securing the loan.

      2.      A material adverse change occurs in Borrower's financial condition, or lender believes the prospect of payment or performance of this Note is impaired.

      3.      Lender in good faith believes itself insecure.

      4.      Borrower fails to comply with or to perform any other term, obligation, covenant, or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Additionally, the terms of the Deed of Trust include, among other promises, your promises that:

      5.      Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.

      6.      Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property.

      7.      Compliance with Laws.  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

      8.      Compliance Default.  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

      9.      Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness.

      10.     Breach of Other Agreement. Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

      11.     Adverse Change.  A material adverse change occurs in Borrower's or Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

      12.     Insecurity.  Lender in good faith believes itself insecure.

Through a letter dated December 19, 2022, the City of Albuquerque, New Mexico gave Saishivan Lodging, LLC a 10-day notice that, at the expiration of such period, that the City will file a nuisance abatement complaint against Bank's collateral found at 7640 Central Ave. SE, Albuquerque, NM 87108. The remedies available to the City of Albuquerque include, but are not limited to, closure of the property for a sustained period of time.

In addition, the United States District Court for the District of New Mexico has included a forfeiture allegation concerning the criminal allegations filed against Pragneshkumar R. Patel at Case No. 19-CR-01631.  This forfeiture allegation includes, but is not limited to, the real estate described in the Deed of Trust securing the Note.

***Bank hereby gives you, and each of you, NOTICE OF DEFAULT under the terms of the Note and Deed of Trust.***

### Demand

In the Note, Saishivam Lodging, LLC, Pragneshkumar R. Patel, and Rakshaben R. Patel jointly and severally agreed to pay the amount of the loan in full immediately upon Lender's demand, but if no demand is made, in accordance with the payment schedule set forth in the Note.

***Through this letter, Bank hereby demands immediate payment, in full, of the loan, including all principal, interest, default interest, attorney fees, costs, and all collection costs.***

You are instructed to contact my office at the number on the above letterhead to make arrangements for full and immediate payment of the Note.

The Bank hereby fully and expressly reserves, and does not waive, all rights and remedies available to it.

Govern yourselves accordingly,

James P. Meuret
JPM/km
CC:    Riverstone Bank
       % Ron Waller